Houston & Texas Central Railway Company v. Mollie Turner.

Decided January 30, 1904.

**1.—Trial—Abandonment of Special Charges.**

At the trial special charges were asked by plaintiff's counsel and were marked refused by the judge, who then asked plaintiff's counsel if he desired to read them, and while the latter was reading them in the presence of the court, plaintiff's counsel claimed and took them and handed them to the judge, who handed them to the clerk with instructions to file them. The judge then read the main charge to the jury, and about the time the reading was finished, the special charges having been then filed, defendant's counsel took them from the clerk and kept them until after verdict, but did not again ask that they be given, nor did plaintiff's counsel, after the filing, ask the court to have such charges delivered to him for examination. Held, that the charges were not abandoned so as to preclude an assignment of error based on the refusal to give them.

**2.—Negligence—Issue Raised—Charge.**

Where in an action for negligence causing the death of a track foreman it was alleged that the cars which struck and killed the deceased were moving at a speed in excess of six miles an hour in violation of a city ordinance, and there was evidence raising the issue as to whether the speed was greater or less than six mils per hour, it was error for the court to refuse a charge submitting the issue, even though there was ample evidence to sustain a verdict in plaintiff's favor. Though the charge, as requested, was not strictly correct, it was sufficient to call the court's attention to the omission in the main charge of any instruction upon the issue.

**3.—Action for Death—Measure of Damages.**

In an action by the wife for damages for the husband's death it was error for the court to charge that "the measure of damages would be pecuniary compensation for the loss of the husband; that is, such amount of money, estimated as received at the present time, as plaintiff might reasonably and probably have received from his earnings and accumulations had he not been killed," since the jury should be permitted to decide under all the circumstances of the case whether a sum less than the aggregate amount which the plaintiff would probably have received in the course of time had the husband lived would compensate for the pecuniary injury sustained.

**4.—Contributory Negligence—Proximate Cause—Charge.**

It was proper for the court to refuse a charge which instructed the jury that if they found certain facts to exist the same constituted contributory negligence on the part of the deceased and precluded a recovery, though such negligence was not the proximate cause of the injury. If it was the proximate cause, it would have precluded recovery.

**5.—Same—Charge.**

The defendant is entitled, where contributory negligence is a vital issue in the case, to have the facts relied on to establish such defense grouped in a charge properly submitting the issue.

**6.—Evidence in Rebuttal.**

Where testimony was introduced by the defendant to the effect that the deceased, in a conversation just before he died, stated how he got hurt and that the company was not to blame, and that he was killed through his own fault, it was competent for plaintiff to prove in rebuttal that deceased did not in such conversation use the language attributed to him, but said that he had had a foul deal and was not to blame.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*Baker, Botts, Baker & Lovett* and *Frost & Neblett,* for appellant.

*Templeton & Harding* and *Lancaster & Beall,* for appellee.

TALBOT, Associate Justice.—William Turner was struck and killed by the cars of the Houston & Texas Central Railroad Company, on November 20, 1901. He was a section foreman of appellant and in charge of a gang of men at work in its switch yard in the city of Waxahachie. There were three parallel tracks in the yard a short distance apart, running east and west. The north track was known as the passing track, the middle as the main track, and the south track as the elevator track. The section men under the control of the deceased, William Turner, were engaged at the time of the accident in putting in what is called a cut-off track between the main track and the passing track on the north side of the main track. The yard crew were engaged in switching and transferring cars from one track to another. While this switching of cars was being done the deceased, Turner, went upon the elevator track, some twenty or fifty feet feet from where his men were at work, at or near the east end of a flat car which was standing on that track. While in this position the switch crew "shoved" or "kicked" back from the west onto the elevator track some box cars which by the impetus given them by the engine rolled back eastward, struck the flat car, causing it to move suddenly forward against Turner, knocking him down and running over him, inflicting injuries upon him from the effect of which he died in a few hours. He left surviving him Mollie Turner, his wife, who brought this suit to recover damages alleged to have been sustained by her on account of her husband's death.

The defendant answered by general demurrer and general denial, and pleaded contributory negligence and assumption of risk on the part of the deceased. There was a trial by jury and a verdict and judgment in favor of appellee for the sum of $10,000.

Appellee objects to the consideration by this court of appellant's assignments of error 13 to 25, inclusive, which relate to and are based upon special charges requested by appellant and refused by the court. The contention is that such special charges were withdrawn and abandoned by appellant in the court below.

It appears from the record that on the evening preceding the morning that the court's charge to the jury was read, at the request of appellant's attorney the trial judge handed said charge to said attorney for inspection. That said attorney read same and presented to the judge a number of special charges prepared by him and requested that said special charges be given in charge to the jury in addition to the court's main charge. The judge, after an examination of said charges, marked each of them "refused," and before reading his main charge to the jury, asked one of appellee's attorneys if he desired to read or see said special charges, to which he replied in the affirmative. The judge then remarked that the special charges were in his private office, and the attorney for appellee got them and in the presence of the court and counsel for appellant was in the act of reading them. Whereupon counsel for appellant objected to attorney for appellee reading said charges and took

them from him, stating that they were his property and not court papers, and that he would file them when it suited him. Attorney for appellant then handed said charges to the judge presiding who in turn handed them to the clerk, with instructions to file them. Counsel for appellee protested against this action and claimed the right and privilege to examine said special charges, and stated that after an examination of the same they would probably agree to the giving of them in charge to the jury; and not being allowed to read said charges, excepted to the proceedings on the ground that if said charges were requested to be given by the court, then they were court papers, and if they were not court papers, then such special charges could not be considered as having been requested. The judge then read his main charge to the jury and they retired. About the time the court concluded reading his charge to the jury, the clerk finished filing the special charges and the attorney for appellant took them from the clerk and kept them during the deliberation of the jury and did not again ask that they be given in charge to the jury.

When these special charges were delivered to the judge it became his duty to give such of them as in his judgment contained correct propositions of law applicable to the facts of the case, not covered by the main charge, and to refuse such as did not embody such propositions. Whether given or refused the duty devolved upon the judge to indorse his action thereon and to direct the clerk of the court to mark them filed and place them among the papers of the case. When so delivered to the judge and by him ordered filed, they became court papers and as much a part of the record in the cause as other papers filed therein. They were then subject to the control of the court, and could not be withdrawn without the consent of the parties and permission of the court. A very cogent reason may be found for the rule in the fact that whenever the trial judge has been misled and induced to give an erroneous instruction to the jury by reason of a 'special charge requested to the same effect, the appellate courts have treated such error as having been invited, and have uniformly held that the party responsible therefor would not be heard to complain. Furthermore, we are of the opinion that the practice of submitting special charges asked, to opposing counsel, in order that the trial judge may have the benefit of their respective views to assist him in a correct presentation of the law to the jury upon every issue in the case, is to be commended. The object and purpose of securing a fair trial, free from errors, should be kept steadily in view by the court and counsel engaged in the trial of any cause, and the most effective methods for the accomplishment of that end should be pursued.

In the case at bar the bill of exception shows that appellee's counsel claimed the right to examine the special charges asked, and that counsel for appellant insisted that they were not court papers and that appellee's counsel could not see nor read them until after they were filed by

the clerk. It does not appear that, after the court directed the clerk to file the charges, and appellant's counsel had withdrawn them from the custody of the clerk, any request was made of appellant's counsel for them, or of the court to require counsel for appellant to deliver said charges to appellee's attorneys for examination, as court papers. If, after such filing, request had been made for said charges and refused, and the court then requested to require the delivery of them, the presumption will be indulged that the court, in a proper exercise of its authority, would have complied with such request. And in view of the absence of such request and the failure to call into requisition the aid of the court, we do not feel authorized to hold as a matter of law that said special charges had been abandoned and refuse to consider them.

It is insisted under appellant's first assignment of error that the issue of assumed risk on the part of deceased, William Turner, was raised by the evidence, and that the court erred in failing to submit that issue to the jury. In view of the earnestness with which the proposition has been urged we have very carefully considered the contention, but with the conclusion reached that it should not be sustained. It is sufficient to say that, after a careful review of the evidence contained in the record, we are of the opinion that the real issue involved is one of contributory negligence on the part of deceased, and that the court correctly declined to submit the question of assumed risk.

Appellant complains of the action of the court in refusing to give in charge to the jury its special charge number 8, which reads as follows: "You are instructed, that if from the evidence you find that the movements of the cars in making the switch of the cars was at a speed of not more than five or six miles an hour, then no recovery can be had by plaintiff on the alleged ground of negligence that the speed of the movement of the cars was unlawful." One of the specific acts of negligence alleged in plaintiff's petition was, in effect, that in violation of a municipal ordinance of the city of Waxahachie the cars which were being switched and which caused William Turner's death, were moving at a rate of speed in excess of six miles per hour. Evidence was introduced upon this question, but the court did not charge upon the issue raised. It is conceded by counsel for appellee in their brief that the evidence not only raised the issue of negligence in running the cars at a greater rate of speed than six miles an hour, but contends that the same was amply sufficient to have authorized a finding in favor of appellee upon that issue.

In view of these allegations and the evident prominence given the issue in the progress of the trial, it is believed the appellant was entitled to a proper charge upon that phase of the case. If the special charge requested was not strictly correct, standing alone, because of the allegations and probable issue that appellant's employes were guilty of negligence in permitting said cars to run down said track at a high rate of speed, though less than six miles an hour, yet it was sufficient to call the

court's attention to the omission in the main charge and suggest the giving of a suitable instruction thereon, at the same time carefully guarding other issues in the case.

Upon the measure of damages the court charged the jury as follows: "You are further instructed that if you find for the plaintiff under the foregoing instructions, the measure of damages would be pecuniary compensation for the loss of her husband; that is, such amount of money, estimated as received at the present time, as she might reasonably and probably have received from his earnings and accumulations had he not been killed." This charge is assigned as error,. and the assignment must be sustained. It is peculiarly worded, of doubtful construction, and under the most favorable consideration does not conform to the rule announced by our Supreme Court. In the case of Railway Co. v. Morrison, 93 Texas, 529, it is said the "charge given required the jury only to find the amount of the pecuniary aid which the plaintiffs would have received from their son if he had not been killed; and assumed that such amount was fixed by law as the measure of damages. This took from the jury the right to consider the question whether or not a less sum paid now would compensate the plaintiff for their loss of the aid which their son would have rendered, as he would probably have rendered it during the whole of their lives. * * * Whether or not a less sum than that to which the son's whole contributions would have amounted would compensate plaintiffs for the loss of such contributions as he would have made them, was a question which should not have been taken from the jury by a charge which assumed that the compensation must necessarily consist of a sum equal in amount to that of such contributions."

In the more recent case of Merchants and Planters Oil Co. v. Burns, 96 Texas, 573, 7 Texas Ct. Rep., 565, the substance of a special charge asked and refused was as follows: "She can only recover such sum as would represent the present worth of the probable amount which Burns would have contributed to her support had he lived." This charge was held to be erroneous, and in discussing it Judge Brown remarks: "The effect of this charge would be to prescribe a mathematical rule by which to ascertain what a given sum would be worth at the time of the trial. While the jury may not arbitrarily assess such sum as to them may seem proportionate to the injury without reference to the facts and circumstances of the case, yet the law does confide to them considerable discretion, and the court should not undertake to lay down a fixed rule by which they must be governed in ascertaining that sum which now paid would be compensation for the pecuniary injury sustained. * * * The trial court should inform the jury that the effect of the law is to give compensation for the pecuniary loss, but the jury must be permitted to decide, under all the circumstances of each case, whether a sum less than the aggregate amount which the deceased would probably have contributed to the injured party, if he had lived, would compensate for

the pecuniary injury sustained." See, also, San Antonio Traction Co. v. White, 94 Texas, 468; Railway Co. v. Worthy, 87 Texas, 459.

Giving the charge under consideration in the present case the most favorable construction of which its language is susceptible, for the purpose of upholding it, still, when tested by the rule announced in the cases mentioned, it is clearly incorrect and requires a reversal of the case. It unquestionably assumes that compensation for the pecuniary injury sustained by appellee in the loss of her husband must necessarily consist of a sum of money equal to such an amount as she might probably have received from his earnings and accumulations from time to time throughout his life, had he not been killed; and deprived them of the right to consider whether or not a less sum paid now would have compensated her for the loss sustained.

The basis of appellant's eighteenth assignment of error is the refusal of the court to give in charge to the jury the following special instruction: "You are instructed that if William Turner voluntarily went behind the flat car on the elevator track, and that such position taken by him was by him known to be one of probable danger, and that such act on his part was an act which an ordinarily prudent person, having regard for his own protection and personal safety, would not have done, and that he thereby contributed to his own injury, then, though you may believe the defendant's employes were guilty of negligence in making the switch, or in the movement of the cars, the plaintiff should not recover, though the negligence of William Turner was not the proximate cause of his injury."

This charge is erroneous in that the jury were told, in effect, that if they found the facts to exist as therein stated, the same constituted negligence on the part of the deceased, Turner, and precluded a recovery by appellee, although such negligence was *not* the proximate cause of his injury. If the deceased, Turner, was guilty of negligence in the respect mentioned in said charge, and such negligence *was* the proximate cause of his injury, then appellee was not entitled to recover. It was not enough to defeat appellee's recovery by reason of this issue, that the jury believed that deceased was guilty of negligence, but they must also have believed that such negligence contributed proximately to his injury and death. Had the special charge been in conformity with the views of the law here expressed, it should have been given. The plea of contributory negligence was a vital issue in the case, and was presented in a very general way only, in the main charge. We are of the opinion that the appellant is entitled upon another trial, if the evidence is the same as now before us, to have the facts upon which it relies to establish such defense grouped in a proper charge and the issue thus submitted to the jury. Gulf C. & S. F. Ry. Co. v. Maughan, 95 Texas, 413.

We believe there was no error in admitting the evidence complained of in appellant's twenty-sixth and twenty-seventh assignments of error. Witnesses introduced by appellant had related their version of a con-

versation had with the deceased just before he died.   They had testified, at the instance of appellant, in substance, that the deceased stated in this conversation particularly how he got hurt and said the company was not to blame, and that he was killed by his own fault.   This statement attributed to deceased was denied by appellee, and in rebuttal she placed witnesses on the stand who testified that they were present and heard the same conversation related by witnesses for appellant; that deceased did not state what appellant's witnesses say he did, but on the contrary that he stated that he had had a "foul deal" and was *not* to blame.   This testimony was not offered by appellee as a part of the res gestae, but in rebuttal of the testimony which had been given by appellant's witnesses, and we think clearly admissible under the circumstances shown by the record.

We deem it unnecessary to discuss other assignments.   The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*